UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHELLE M. P.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 3:20-CV-5815-DWC

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of her applications for supplemental security income (SSI) and disability insurance benefits (DIB). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

BACKGROUND

In April 2016, Plaintiff filed applications for SSI and DIB, alleging disability since December 31, 2010. Administrative Record (AR) 214. The applications were denied initially and upon reconsideration, and a hearing was held before ALJ Allen G. Erickson (the ALJ) on April

30, 2019. AR 38-122. In a written decision dated June 27, 2019, the ALJ decided that Plaintiff was not disabled. AR 12-35. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-6; 20 C.F.R. §§ 404.981, 416.1481.

On appeal to this Court, Plaintiff maintains the ALJ erred by failing to properly evaluate her testimony, the medical evidence, and her residual functional capacity, giving rise to an erroneous step five finding that she was not disabled. Dkt. 14.

## THE ALJ's FINDINGS

The ALJ found Plaintiff has the severe impairments of atrial fibrillation, posttraumatic stress disorder (PTSD), major depressive disorder, and borderline personality disorder. AR 17. The ALJ found the combination of Plaintiff's impairments do not meet or equal any Listing. AR 18-20. The ALJ found that Plaintiff has the residual functional capacity to perform light work except

> [s]he can occasionally climb ladders, ropes or scaffolds. She can occasionally crawl. She can have occasional exposure to vibration, temperature/humidity extremes, and concentrated levels of dust, fumes, gases or poor ventilation. She can understand, remember, and apply short, simple instructions. She can perform routine tasks. She cannot work in a fast-paced, production type environment. She can make simple decisions. She can tolerate exposure to occasional, routine workplace changes. She can have occasional interaction with the general public.

AR 20. The ALJ found Plaintiff was unable to perform any past relevant work, but she could perform the jobs of small production [sic] assembler, routing clerk, and mailroom sorter, and she was therefore not disabled. AR 26-28.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The U.S. Supreme Court describes it as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations omitted).

## DISCUSSION

### I. The ALJ Properly Discredited Plaintiff's Testimony.

According to Plaintiff, the ALJ erred by failing to credit 100 percent of her testimony. Dkt. 14 at 10.

#### a. Standard

When assessing the reliability of a claimant's disability allegations, an ALJ considers the extent to which such allegations are consistent with the objective evidence and other evidence in the record. 20 C.F.R. §§ 404.1529(c), 416.929(c). Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

"In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997).

b. Analysis

i. Plaintiff's Testimony

At her hearing Plaintiff testified that she could not work due to her chronic heart and mental health issues. AR 70, 74, 82. She testified that her heart issues cause her to have symptoms including episodes of chest pain, shortness of breath, lethargy, feeling flushed, and tachycardia. *Id*. at 71, 78, 103-04. Plaintiff further testified that she sometimes faints or loses consciousness and has to be resuscitated with paddles. *Id*. at 71, 78, 103-04.

Plaintiff testified that she used to be healthy and able to walk places but can no longer even walk around the block. *Id*. at 94, 105. She said she gets short of breath for a few minutes after she walks from her bed to the bathroom and back. *Id*. at 106.

Yet, Plaintiff also testified that she has mostly been homeless during the relevant period, during which she sometimes stayed with friends, sometimes lived in a tent, and is now living in an RV on a friend's property. *Id*. at 76-77, 87-92, 94-98. She explained that during this time she has not had regular access to basic utilities such as hot water and a flushing toilet. *Id*. at 90-91, 98-99.

Plaintiff testified that she has had psychiatric and cardiac issues her entire life. *Id*. at 82. She said she does not engage in mental health care because she has been focusing on her heart

issue. *Id*. Even still, according to Plaintiff, prescription heart medications were not helpful and the cardiac ablation she underwent a few years ago has not cured her heart episodes. *Id*. at 77-79.

Finally, Plaintiff testified that her past poly-substance abuse did not contribute to her physical or mental problems, and in fact she feels her issues have worsened since she stopped abusing drugs. *Id*. at 70.

ii. The ALJ's Findings

The ALJ discounted Plaintiff's testimony, principally[1] because it was inconsistent with the medical record. AR 23. For example, the ALJ considered Plaintiff's multiple emergency room visits for atrial fibrillation and Plaintiff's cardiac ablation in mid-2017. *Id*. He found that although EKGs showed evidence of atrial fibrillation at times, they were otherwise unremarkable. *Id*. at 23-24, 590, 622, 671, 1050, 1328, 1597, 1895, 1935, 1951. Echocardiograms were also unremarkable. *Id*. at 23-24, 1052, 1073, 1467, 1475, 1895, 1905, 2192. Diagnostic imaging of Plaintiff's chest was negative. *Id*. at 23-24, 507, 618, 650, 672, 1049, 1249, 1418, 1466. Plaintiff's treadmill exercise test indicated she had fair to good exercise tolerance without arrhythmia or ischemia. *Id*. at 23-24, 1895. Her cardiac event monitor report was also unremarkable. *Id*. at 23-24, 193 ("Normal sinus rhythm" and "no malignant arrhythmia detected"). Treatment providers found she had tachycardia/irregular heart rate at times, but she otherwise had unremarkable physical exams. *Id*. at 23-24, 459, 470, 503, 509, 530, 575, 596, 616, 671, 1024, 1052, 1328, 1433, 1469, 1475, 1597, 1889, 1892, 1895, 1939-1940, 1942-1943.

---

[1] The ALJ also found that Plaintiff's activities of daily living were inconsistent with allegations of totally debilitating symptoms, and that she stopped working in December 2010 for reasons unrelated to her impairments. AR 25, 339. Given the substantial medical reasons the ALJ cited for discrediting Plaintiff's subjective complaints, the Court finds it unnecessary to also discuss these additional reasons at greater length.

The ALJ also found that the medical evidence supported a finding that Plaintiff could perform the mental demands set forth in the residual functional capacity. AR 23-24. Specifically, the ALJ pointed out that treatment providers repeatedly found intact orientation, concentration and memory. *Id*. at 23, 470, 585, 596, 1942. An examining psychologist found she had full orientation, intact memory, intact concentration, intact fund of knowledge, and intact abstract thought. *Id*. at 2167-2178. Another examining psychologist found she had normal thought process and content, orientation, perception, memory, fund of knowledge, concentration and abstract thought, and she scored 29 out of 30 indicating no cognitive impairment on mental status examination. *Id*. at 2179-2191. Treatment providers and examiners also repeatedly found she had intact insight and judgment. *Id*. at 23, 470, 585, 596, 615, 690, 1942, 2167-2191.

With regard to Plaintiff's ability to interact with others, the ALJ noted "treatment providers repeatedly found she was pleasant/cooperative[.]"AR at 24, 452, 458-59, 509, 661, 1252, 1419. Similarly, they repeatedly found she had "normal/appropriate mood and affect." *Id*. at 24, 458, 470, 503, 510, 575, 596, 615, 690, 1942. Examining psychologists found good eye contact, cooperative behavior, appropriate engagement, and normal/full range affect. *Id*. at 2167-2191. Thus, the ALJ found that Plaintiff could occasionally interact with the general public but should avoid fast-paced production type work to avoid exacerbation of mental health symptoms. *Id*. at 24.

Plaintiff's argument that the ALJ failed to acknowledge treatment notes in which she was found to be distressed, paranoid, very anxious, and otherwise uncooperative with treating providers is unpersuasive given these records show she was still actively using methamphetamine and other substances at those times. Dkt. 14 at 12 (citing AR 469, 471, 615, 671-672, 948-949). For instance, although Plaintiff presented as "very anxious" immediately

before an emergent cardioversion procedure in 2016, medical providers counseled her at that appointment that "she needs to stop using" and she was offered drug and alcohol resources. AR 672-73. Similarly, emergency room records from June 2014 describing Plaintiff as "somewhat uncooperative and borderline hysterical" also reflected her "problems with alcohol in the past and . . . long history of drug abuse and IV drug use." AR 948.

Though the ALJ did not hold her history of drug abuse and cigarette smoking against her, the ALJ did find that Plaintiff "has been non-compliant with cardiac treatment/medication, which suggests that her symptoms may not have been as limiting as alleged." AR 24. For example, the ALJ cited a treatment note from February 2013 reflecting that Plaintiff had been refusing medication for her atrial fibrillation. *Id*. at 24, 1051. In August 2015, a treatment provider noted she was non-compliant with her medications. *Id*. at 24, 621. In February 2016, a treatment provider noted she was non-compliant with her medications and had poor follow-up, as she had not followed up with cardiology at all. *Id*. at 24, 669. In December 2016, a treatment provider noted she had not been seeing any physician for her "off and on atrial fibrillation." *Id*. at 24, 1469.

Minimal or conservative treatment is "powerful evidence" regarding the extent of a claimant's symptoms, including pain. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Not seeking aggressive or alternative treatment permits the inference that a claimant's symptoms were not as severe as reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Still, Plaintiff argues that "it is apparent that [she] has had limited insight into her medical impairments." Dkt. 14 at 12. Even if this were true it would not excuse her non-compliance. Nevertheless, the record belies this claim, where Plaintiff testified at great length during the hearing regarding her alleged impairments and how she believed they affected her. AR 71-110.

Plaintiff told the ALJ she never felt medication made much of a difference in her symptoms. AR 76-78. And when her representative attempted to question her further about medication compliance, Plaintiff denied being non-compliant. AR 109.

Finally, regarding Plaintiff's mental functioning, the ALJ acknowledged Plaintiff's testimony that she had "psychiatric issues" her whole life, but noted Plaintiff did not allege debilitating symptoms and limitations related to mental impairments, or explain how these issues limited her functionally. AR 24. The ALJ concluded that the "lack of related complaints is consistent with the medical evidence showing no psychotropic medication use or mental health treatment during the period at issue," as well as the essentially unremarkable mental status exams of examining psychologists. AR 24, 2167-78, 2179-2191.

Plaintiff argues that the ALJ should have questioned her more thoroughly about her alleged psychiatric conditions. Dkt. 14 at 12. However, the ALJ did ask her if she had any psychiatric issues, and if so, for how long. AR 82. He asked if she had sought any treatment for those psychiatric issues, or whether there were periods when they went untreated. *Id*. Plaintiff responded, "No, the psychiatric, I haven't been treat [sic]– I've just been focusing on my heart issues." *Id*. at 82, 2180. Moreover, as the hearing came to a close the ALJ asked if there was anything more Plaintiff wanted to tell him, providing yet another opportunity to meet her burden of explaining how this allegedly disabling impairment prevented her from working. AR 120. Plaintiff offered no further information. *Id*.

In sum, this Court finds the ALJ pointed to clear and convincing reasons supported by substantial evidence to conclude that Plaintiff's medically determinable impairments were not as severe as she alleged. AR 21.

///

II. The ALJ Properly Evaluated the Medical Evidence.

Plaintiff claims the ALJ failed to properly evaluate all of the medical evidence, and that "a reasonable ALJ who properly evaluated the medical evidence and fully credited the opinions of Dr. Bowes, Dr. Palasi, and Dr. Norris could have reached a different disability determination." Dkt. 14 at 10.

a. Standard

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

An ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin*., 169 F.3d 595, 602 (9th Cir. 1999)). This situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin*., 528 F.3d 1194, 1199-1200 (9th Cir. 2008). "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for

rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200). Notably, a psychiatrist's clinical interview and mental status evaluation are "objective measures" which "cannot be discounted as a self-report." *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

b. Analysis

A. Tasmyn Bowes, Psy.D (Bowes)

Plaintiff alleges the ALJ erred by stating he was giving "great weight" to Bowes' opinion, but then failing to incorporate into her residual functional capacity (RFC) "all of the significant limitations described by [Bowes]." Dkt. 14 at 3.

Plaintiff misconstrues the ALJ's finding. The ALJ did incorporate Bowes' opinion into the RFC. AR 25 (citing AR 2179-91). Bowes assessed only mild to moderate limitations in functioning based on the largely unremarkable mental status examination, and found that Plaintiff could perform, understand, remember, and persist in tasks by following very short and simple instructions, and could also learn new tasks. AR 2182. The ALJ incorporated this opinion by limiting Plaintiff to understanding, remembering, and applying only "short, simple instructions," performing only "routine tasks," and making "simple decisions." AR 20. He further found that Plaintiff "cannot work in a fast-paced, production type environment," and can only "tolerate exposure to occasional, routine workplace changes." *Id*. She can have only occasional interaction with the general public. *Id*.

The ALJ found that Bowes' opinion was "generally consistent with the assessment of Dr. Norris." AR 25. As discussed below, Norris also assessed only mild to moderate limitations in mental functioning based on his unremarkable mental status examination results. AR 25. Accordingly, the ALJ gave Bowes' opinion "great weight" because "the doctor examined the

claimant and it is consistent with the doctor's fairly unremarkable mental status exam." AR 25, 2183.

The ALJ reasonably accommodated Bowes' opinion that Plaintiff was able to understand, remember, and persist in tasks by following very short and simple instructions by limiting Plaintiff to understanding, remembering, and applying only "short, simple instructions" and performing only "routine tasks" and making "simple decisions." AR at 20, 2182. The ALJ also accommodated Bowes' opinion that Plaintiff had moderate limitations adapting to changes and maintaining appropriate behavior in a work-setting by prohibiting any kind of fast-paced work environment, which he explained could exacerbate her mental health symptoms, and limiting Plaintiff to only occasional interaction with the general public. AR at 20, 24, 2182.

While the check-the-box forms Bowe's used to indicate these limitations sometimes asked her to indicate the claimant's ability to perform a given task "without special supervision," this Court does not find the ALJ's failure to further limit some of Plaintiff's limitations with the need for "special supervision" to be inconsistent with the limitations Bowes opined. Notably, Bowes also completed a check-the-box form indicating Plaintiff's thought process and content, orientation, perception, memory, fund of knowledge, concentration, abstract thought, and insight and judgment were all "within normal limits." Dkt. 16 at 2; AR 2184. Accordingly, this Court finds the ALJ properly incorporated Bowes' opined limitations into the RFC.[2]

///

///

---

[2] An ALJ's RFC needs to be consistent with—not identical to—a reliable clinician's opinion. *See Turner v. Commissioner of Soc. Security*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). The regulations clearly provide that it is within the province of the ALJ to determine the appropriate restrictions in the RFC. *See* 20 C.F.R. §§ 404.1546, 416.946.

B. Myrna Palasi, M.D. (Palasi)

Plaintiff alleges the ALJ erred by giving "little weight" to Palasi's opinion because it was based, in part, on a finding of the presence of deep vein thrombosis (DVT) yet the ALJ found the record does not support DVT. Dkt. 14 at 4; AR at 26. According to Plaintiff, the ALJ "should have developed the record by recontacting [Palasi] in order to clarify this apparent conflict in her assessment." Dkt. 16 at 2.

However, the ALJ did not find any internal conflicts in Palasi's opinion. Instead, the ALJ gave Palasi's opinion "little weight" because Palasi did not examine the Plaintiff and her opinion was "inconsistent with the clinical findings of treatment providers who found she had irregular heart rate at times but otherwise unremarkable physical exams." AR 26, 459, 470, 503, 509, 530, 575, 596, 616, 671, 1024, 1052, 1328, 1433, 1469, 1475, 1597, 1889, 1892, 1895, 1939-1940, 1942-1943. Furthermore, contrary to Palasi's reliance on "DVT" as a basis for her findings, the ALJ pointed out that "there is no DVT shown in Doppler, only superficial venous thrombosis, and congestive heart failure is clearly not severe with normal echocardiograms (normal ejection fractions)." AR 26, 1051, 1073, 1467, 1475, 1895, 1905, 2192.

These were specific and legitimate reasons to reject the contradicted opinion of a non-examining physician. Even if this Court were to join Plaintiff in speculating about whether Palasi actually meant something different than DVT (Dkt. 14 at 4) it would not change that the ALJ's reasons for rejecting some of Palasi's opined limitations were legally sound.

C. Jack Norris, Ph.D. (Norris)

Similar to her argument regarding Bowes, above, Plaintiff alleges the ALJ erred by stating he was giving Norris' opinion "great weight" but failing to incorporate into the RFC all of the limitations opined by Norris. Dkt. 14 at 4-5.

The ALJ stated he was crediting Norris' opinion that Plaintiff had mild to moderate limitations in her ability to perform basic work activities "related to mental functioning" for the last nine to 18 months. AR 26. The ALJ found that Norris' assessment of "mild to moderate limitations in basic work activates related to mental functioning" was consistent with his "fairly unremarkable mental status exam," as well as Bowes' opinion. AR at 25. The ALJ accommodated this limitation into Plaintiff's RFC by limiting her to understanding, remembering, and applying only "short, simple instructions," performing only "routine tasks," and making "simple decisions." AR 20, 2170. The ALJ also accommodated Norris' assessment of moderate limitations in social functioning and adapting to changes and maintaining appropriate behavior in a work-setting by prohibiting any kind of fast-paced work environment, and limiting Plaintiff to only occasional interaction with the general public. AR 20, 2182.

Plaintiff does not explain what additional limitations she believes should have been included. *See* Dkt. 14 at 5. In any case, this Court finds the ALJ reasonably incorporated Norris' opined limitations into Plaintiffs' RFC.

D. Other Medical Sources

Finally, Plaintiff charges that the ALJ improperly credited the opinions of four non-examining physicians—Funkenstein, Flocks, Tayloe, and Bugg—"by failing to account for the fact that none of [them] reviewed all of the relevant medical evidence." Dkt. 14 at 10; Dkt. 16 at 3 (citing 20 C.F.R. § 404.1527(c)(3)[3]).

---

[3] 20 C.F.R. § 404.1527(c)(3) states, "Supportability. The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources."

There is no requirement that non-examining physicians review "all" of the evidence before rendering an opinion. Instead, the ALJ will look at the "degree to which [they] consider[ed]" such evidence in evaluating the "supportability" factor. *See* 20 C.F.R. § 404.1527(c)(3). The opinions of non-treating physicians may "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, regarding Funkenstein and Flocks the ALJ wrote:

> The opinions are given great weight because the doctors had the benefit of reviewing medical evidence and they are consistent with the clinical findings of treatment providers and examining psychologists. Furthermore, they are generally consistent with the opinions of Drs. Norris and Bowes.

AR 26. And regarding Tayloe, and Bugg, the ALJ found:

> The opinions are given great weight because the doctors had the benefit of reviewing medical evidence and they are consistent with the clinical findings of treatment providers and essentially unremarkable diagnostic cardiac testing. Specifically, treatment providers found [Plaintiff] had irregular heart rate at times but otherwise had unremarkable physical exams.

*Id*.

This Court finds no error in the ALJ's evaluation of these non-examining medical sources.

   III.   The ALJ properly assessed Plaintiff's Residual Functional Capacity (RFC).

Plaintiff urges this Court to find that the ALJ's RFC is legally erroneous and not supported by substantial evidence because it does not include all of the limitations described by Bowes, Palasi, and Norris, as well as her own subjective limitations. Dkt. 14 at 16.

   a.   Standard

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and

restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184, at *2. A claimant's RFC assessment is used at Step Four to determine whether he or she can do his or her past relevant work, and at Step Five to determine whether he or she can do other work. *Id*. A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id*.

b. Analysis

Having determined, above, that the ALJ reasonably found Plaintiff's subjective complaints to be less than fully credible, reasonably rejected some of the medical evidence, and reasonably incorporated the limitations opined by reliable medical sources, this Court finds no merit to Plaintiff's argument that the ALJ's RFC is flawed.

CONCLUSION

In conclusion, this Court finds the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence. Accordingly, the Commissioner's final decision is affirmed.

Dated this 24th day of May, 2021.

David W. Christel
United States Magistrate Judge